I would like to reserve two minutes for rebuttal and I will watch the clock. Nevada second-degree murder is not a crime of violence. Because the statute is also indivisible, the district court miscalculated Pineda's guideline range requiring resentencing. Nevada second-degree murder does not involve the use of force. NRS 200.010 includes drug provisions in subsections two and three, defining a second-degree murder to include any killings proximately caused by a controlled substance violation. Under Borden, the use of force for intentional conduct requires full awareness of the consequent harm. Here, however, the drug provisions hold a defendant liable for any proximately caused drug-related death, thereby punishing killings that are both unintended and unforeseen. Your client, as I understand it, you correct me I'm wrong in my misapprehension of the facts. The victim of his offense broke into or entered into his home without permission? Is that right? So the facts underlying the second-degree murder conviction, that relates to a killing over a property dispute. But here, for the purposes of the categorical approach, we don't inquire into that. No, I'm just asking factually what happened. And to cut to the chase, isn't it true that after the events on the property, your client chased the man down and beat him to death? Am I wrong about that? Slightly, Your Honor. My one correction would be that there was an earlier property dispute over a set of speakers. Later on, my client confronted that man and then sought him out. He ended up beating him and that resulted in the person's death. I might do this conviction or the offense occurred when my client was only 15 years old. He received a sentence of 10 to 25 years in prison and ended up serving only the minimum of that sentence. But here, for the purposes of the categorical approach, we don't care about the specific facts of the underlying conviction. Rather, here we look at the least egregious conduct that criminalized by Nevada second-degree murder. And as explained, it doesn't require the use of force because it doesn't require intentional conduct. And violations of the drug provisions also do not qualify as extremely reckless conduct. So extreme indifference to human life is addressed in a different provision about Nevada second-degree murder, subsection 1. And the controlled substance violation does not have to be inherently dangerous because any controlled substance violation can be the predicate offense for the resulting killing. So the government essentially concedes these arguments. The government instead tries to claim that these are violations of second-degree felony murder. Even if that argument were correct, the government would still have to win that the statute is divisible. Regardless, the government incorrectly characterizes violations of these drug provisions as second-degree felony murder. And we know this for four different reasons. So first, the drug provisions were enacted after the Nevada Supreme Court recognized second-degree felony murder in Morris. Second, the drug provisions have been described as extensions of Nevada's statutory definition of murder, not related to common law offenses such as second-degree felony murder. Third, the two prerequisites that apply to second-degree felony murder do not apply to violations of the drug provisions. So the Nevada Supreme Court has explained that the second-degree murder requires an inherently dangerous felony that is an immediate and direct cause of the resulting killing. But with the controlled substance provisions, the only requirement is a proximate cause relationship between the controlled substance violation and the resulting death. If we were to agree with you and send the case back for re-sentencing, what would be the district court's options in terms of sentencing your client? So the district court would essentially be conducting a new sentencing. So it would be operating on a different guideline range. So the guideline range that we maintain is correct is 27 to 33 months, rather than the, I believe, 33 to 37 months that the district court used. But she could take into consideration the nature of the offense. Can take into consideration the nature of the offense. And also, we know under Pepper can take into account any intervening offense that have happened since the sentencing. So the district court could ultimately end up with the same sentence. But importantly, this Court has emphasized that if the district court gave the same sentence, it would still be below the guideline range as you've recalculated it. It's a little bit. So it would be below the guideline range. But the dispute here was over whether it should be a consecutive or concurrent term. So the district court, if it did end up starting with a different guideline range, could end up varying downwards even further. And the sentence that we asked for here was still less than what the district court ended up giving. So the district court gave our client 24 months consecutive to a state term. So the sentence did not start counting until October of 2023. We asked for 27 months concurrent to the state term, which would have started the sentence counting in February of 2022. So that's the possibility of a different result here. The district court could end up going even lower than what it ended up giving the first time around. I also want to discuss briefly why it doesn't match the federal generic definition of second-degree murder. So the federal generic definition requires for felony murder that it be the result of an inherently dangerous felony. But here, violations of the drug provisions do not contain an inherent dangerous requirement because it incorporates all the Nevada drug offenses in Chapter 453. Moreover, the government has conceded our arguments in our brief that under the model penal code, the treatises, common law, legal dictionaries, that controlled substance offenses are not examples of inherently dangerous felonies. Instead, they've been excluded from traditional understandings of what are dangerous felonies. The government's last resort in terms of the over-breath argument is relying on this court's decision in United States v. Taylor. But there, this court did not address the arguments about over-breath for the drug provisions, rather it addressed whether implied malice equates to extreme recklessness under this court's decision in Begay. And because Taylor's an unpublished decision, it's not very helpful here. I next want to move on to divisibility fairly quickly. So the government in terms of divisibility ignores that the default presumption under Nevada law is that a jury need not be unanimous as to a particular theory of culpability for a single offense to sustain a conviction. And for second-degree murder, the Nevada Supreme Court has described violations of the drug provisions as a theory of second-degree murder. Moreover, it's recited this principle both with first-degree murder and saying that a jury does not have to be unanimous between first-degree premeditated murder or first-degree felony murder, even though these are different provisions within Nevada's law. Same thing with second-degree murder, as we point out in cases like Shuler. And then finally, the verdict form, as the Nevada Supreme Court described in Desai v. State, provides no way to tell the basis for second-degree murder. That case involved second-degree felony murder and second-degree direct acts murder, and the jury verdict form did not provide which theory the jury ultimately relied on. I take it we have no Shepard documents here. No. The government did not provide the Shepard documents. This is another reason why this court should vacate the sentence and not provide the government another opportunity to give them. The government argued for the modified categorical approach in its sentencing memorandum before the district court, but failed to provide the Shepard documents with them. And in such circumstances where the government is on notice that it needs to provide these documents but fails to do so, this court refuses to reopen the record for the government to re-provide them. But here, we don't even think we need to get to the Shepard documents because the statute is indivisible. Unless Your Honors have any further questions, I'd like to reserve the rest of my time for  All right. Thank you. Good morning, Your Honors. May it please the Court, Nadia Ahmed, on behalf of the United States. Your Honors, it's important to note that none of these statutes addressing murder relating to controlled substances in anywhere in the four statutes that touch on this topic do you find the words strict liability or lack of intent. What in fact you do have are four statutes in the Nevada Revised Statute Code where they're talking about murder, where it may be second-degree murder, where it may be manslaughter. So looking at the interplay of these four statutes, you can see, Your Honors, that controlled substances may rise to the level of second-degree murder, but looking at the Nevada Revised Statute Code, specifically NRS 200.070, you see that it specifically says that involuntary manslaughter is the killing of a human being without any intent to do so. So there is clearly defined the absence of intent, so to speak, the strict liability that counsel talks about in their brief, as a manslaughter offense. But where there's either a felony murder event, as it says in that statute section, then that rises to second-degree murder. And Your Honors, when you look at the basis for Panetta's argument, which is 200.010, it talks about these three different types of murder, but both two and three tie back to it being a violation of Chapter 453. And when you look at specifically Section 3, which is referencing NRS 453.3325, there you see that it does require knowing activity, the knowing violation of that section for it to rise to a second-degree or felony, excuse me, murder conviction. This case is going back in any event, isn't it? It is, Your Honor. Did you concede error on the inpatient, outpatient delegation? That's correct, Your Honor. This Court's case law, it's clear that the district court had the duty to clarify whether that was inpatient or outpatient. So we've agreed that that should be remanded for that purpose. And listening to the responses from your friend on the other side, it sounds like Judge Sotomayor has more authority to look at the full consequences of Panetta's behavior in resentencing. Your Honor, I put us to the task of this intricate surgery of the modified categorical approach, and just have a do-over. What's wrong with that? Your Honor, the Court could do that, and it would make sense to do that where you have things like an unpublished Ninth Circuit decision under Taylor that specifically said this is second-degree murder. But it wasn't talking about the controlled substance provision. You're correct, Your Honor. My point only being that those statutes had been in, like, those portions of NRS 200.010 had been enacted when Taylor was considered. So under the categorical approach, for example, they would have had to be looked at under the idea that you look at the least culpable conduct. So just with that context, and as the Court has noted, this is messy in a way to go that route. But it's going back to the district court. The Court certainly could send it back to the district court to look at the modified categorical approach. The truth is that this offense, based on at least the facts in the PSR, would fit the first prong and would make it a violent second-degree murder under the category. Tell me how that would work if the conviction were based on the controlled substance. Is that three or two? Whichever. What's the intent relate to? I mean, if you're a dealer and you sell controlled substance and it results in death, what intent is required to obtain a conviction under that provision of the Nevada statute? So for it to under the Nevada statute, the reference to the Nevada statute. Yes, Your Honor. So looking at the controlled substance provisions, well, first, Your Honor, I would like to just clarify, this particular case, Pineda's prior conviction, is not in any way related to a controlled substance, but addressing the Court's question. I mean, welcome to the categorical approach. We're all there. So looking at, from my read, Your Honor, of NRS 453.3325, there's a knowing requirement as to every one of those prongs, for example. So there is some knowledge that whatever the person did was facilitating the unlawful use of a controlled substance, unlawful. It's essentially, Your Honor, what we argue is that that's why this codified in .010, nonetheless, functions in Nevada law as second-degree felony murder, because it's looking at the felonious conduct of that sale and the consequences of that, Your Honor. So the intent would be that they knowingly committed that felony, is the argument that we make here relating to categorical. Well, I mean, if I were feeling more creative, I could probably come up with something that fits subsection 2, caused by a controlled substance which is sold, given, traded, or otherwise made available, that might not be a felony in the first place. I mean, suppose you're just casual and somehow you've left drugs someplace where somebody else gets a hold of them and ultimately results in that person's death. You might not even have a felony for felony murder. So it's a hard sell. Well, Your Honor, I understand that. And yet there's this interplay with .070, which specifically also says that in the absence of any intent, that's voluntary manslaughter. So I understand that the court, it is a dexterous exercise that we would have to do. But the modified categorical approach does work and is very clear, looking at these three prongs, and even by defense counsel's or appellate counsel's own argument that there are different elements. And so the court certainly could say under the modified categorical approach, this is a divisible statute, and send it back. But then you still have the problem of the Shepard documents. Your Honor, looking at this Court's cases, specifically the ones cited in the reply brief, it's clear that it's up to this Court. And specifically, the Court in Pridget, the case cited most extensively in the reply brief, there the Court made clear that if the government didn't have a fulsome chance, because the district court relied on an erroneous legal argument to make that record, that it's totally permissible for this court to send it back on an open record. And that makes the most sense here, Your Honor, specifically because the district court did decide it categorically fit and did rely on Taylor. And so, again, Taylor is not published, but nonetheless, it was a persuasive authority for that court to rely on. So in Pridget the Court's are put in the position of having to rely upon what they can find from us, and sometimes what they find from us may not be a very close fit. I'm not sure would we need to instruct it to be an open record, or there's going to be a resentencing, the door open? So, Your Honor, I would submit the door is open. The Court should send it back with an open record. And the district court imposed a sentence which wasn't within the guideline range, presumably applying as the district court is supposed to do, the 3553 factors deciding this is the right sentence. That's correct, Your Honor. The Court applied the guidelines, calculated them, and then varied downward to that 24-month sentence, which was below the guideline calculation that Pineda says on appeal applies. So, Your Honor, we would ask the Court to send it back for the second issue regarding inpatient, outpatient. If the Court deems it divisible, which we submit that that statute is at a minimum divisible under the modified categorical approach, we would ask the Court to send it back on an open record and not prohibit the district court from looking at the underlying facts of that conviction, which, again, Your Honors, by at least the facts that are recited in the PSR, and there's no dispute on them by any of the parties, was a violent offense. Does the Court have any other further questions for me? Thank you, Your Honors. Thank you. Judge Clifton, I want to start with your point about that there doesn't even need to be an underlying felony in the first place. That is correct for violations of the drug provisions. So, subsection 2 references any violation of Chapter 453. In Chapter 453, Nevada includes all controlled substance offenses, which includes both misdemeanors and gross misdemeanors. So, it's possible that the underlying controlled substance violation does not even have to be a felony, which is why the felony murder requirements would not necessarily apply. Second, the reason we know this is a strict liability statute is just by looking at the statutory scheme and case law. So, I direct this Court to NRS 453.333, which talks only about proximate causation in terms of the relationship between the controlled substance violation and the resulting death. From that provision, you can tell that the intent focus is only on the intent related to the controlled substance violation. There is no focus at all in terms of an intent for the actual, for the resulting death. And this is confirmed by the cases that we cite in our brief. So, I would direct this Court to Shuler v. State and Bass v.  In both of those cases, the Nevada Supreme Court only focused on the defendant's intent with respect to the drug violation, not with respect to the killing. And we know under Borden that the intent required for a violent felony is one that actually intends the resulting death, not just the underlying conduct. Lastly, I think this Court should hold this to the existing record. I point this Court to the cases that we cite in our brief. The government must be held to the litigation choices it made in this case. And here, the government, in its sentencing memorandum, argued for the modified categorical approach and acknowledged that it would need Shepard documents. By not providing those Shepard documents in the first place, it should not get a do-over on remand. So, for the at least... But I'm not sure, if we say that it's not a categorical fit and don't say anything else, is there really an argument left for modified categorical? It seems to me it's going to go back to the district court anyway, and it would be a resentencing with whatever's on the table. Sure. But I think it would still, I think that is correct, Your Honor, but it would still matter for what the starting point, the guideline range that the district court uses. So, at first claim, I mean, say that the statute is indivisible for all of the reasons that we've provided in our briefs. But even then, if the court has to get to the modified categorical approach, I believe this Court should just remand it on the existing record, at least with respect to that question, because the government has essentially forfeited its opportunity to introduce those documents in the first place. Unless this Court has any further questions, we ask this Court to vacate Mr. Panetta's sentence and remand. Thank you. Counsel, thank you both for your arguments this morning. And this case is submitted.
judges: HAWKINS, CLIFTON, BADE